### Eagle Piece Dye Works, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 6982.   Promulgated March 14, 1928.

*Maurice S. Preville, Esq.*, for the petitioner.
*Donald D. Shepard, Esq.*, for the respondent.

OPINION.

SIEFKIN: ■ The answer to the principal question, the right to deduct $29,631.32 as an item of expense or as losses sustained from gross income of the fiscal year ended May 31, 1919, depends, to a large extent, upon the construction to be placed upon the agreement of February 5, 1918, as modified, and a determination of the legal

relation of the petitioner to its customers before and after such agreement. To indicate the question involved, we summarize the contentions of the parties. The petitioner insists (1) that when the merchandise of its customers was destroyed by fire in January, 1918, the loss was the loss of its customers, the petitioner, being merely a bailee for hire, was not required to insure the merchandise while in its possession and, no negligence being shown, there was no legal obligation on it to make good the loss; (2) that it did not assume a definite binding liability by the agreement of February 5, 1918, as modified, since that agreement contemplated payments to customers only if they gave the petitioner new business and payments were directly based upon such business, and was without legal consideration; and (3) that the payments made as allowances granted to customers between June 1, 1918, and May 31, 1919, were either ordinary and necessary expenses or losses sustained, being used to obtain new business, as a business discount.

The respondent contends (1) that the status of the petitioner to its customers in January, 1918, was that of a bailee for mutual benefit, that the hazardous nature of the business and the custom of the trade created an obligation to insure the customers goods, that the failure to do so created a definite legal liability upon the petitioner at the time of the fire; (2) that the agreement of February 5, 1918, definitely fixed the liability on the petitioner for reimbursement of the losses to the customers, the consideration being the promise of the customers not to sue and the resumption of business relations; and (3) that the deduction of the amount in question as a business expense or a loss between June 1, 1918, and May 31, 1919, is wrong since it is not a trade discount but an allowance for a fire loss which occurred and for which liability was admitted prior to June 1, 1918, and is, therefore, an accrued liability prior to the year in question.

We are able to follow the petitioner to its first conclusion and to say, upon the evidence before us, that the loss by fire was the loss of the customers. There is no evidence showing that the petitioner expressly bound itself by contract to insure or that there was a custom in the trade to insure. The parties agree that the petitioner was a bailee of work for hire and we are satisfied that the law of New Jersey imposes upon such a bailee only ordinary diligence and that negligence is not proved in this proceeding.

The second step in the petitioner's argument is more difficult to take. Although it may be conceded that forbearance to sue where there is clearly no liability is not legal consideration for a contract, the agreement of February 5, 1918, shows that the parties were treating the situation as one in which there was either a liability on the

petitioner or a very real dispute as to its liability. Whether this treatment arose from an ignorance of the legal rights of the petitioner or from the existence of facts known to both parties, but not proved in this proceeding, we do not know, but it is clear that the parties regarded the claim against the petitioner as one making litigation possible and that they were seeking to avoid that litigation. Although the earlier rule of law in England recognized no distinction in regard to the sufficiency of claim which the claimant promised to forbear to litigate other than the broad distinction between good and bad claims, the majority rule in this country undoubtedly is that the intention of the parties constitutes an important element in determining the validity, as consideration, of a promise to forbear from litigation. We believe the facts in this proceeding indicate that the consideration was good. See Williston on Contracts, par. 135, and cases cited under note 78, including *Grandin* v. *Grandin*, 49 N. J. L. 508; 9 Atl. 756.

The petitioner also contends that the original agreement of February 5, 1918, was in substance superseded by another understanding or agreement. The facts as to the extent to which the written agreement was modified are extremely meager and doubtful. So far as they appear at all from the evidence, the terms seem to have been a promise by the petitioner to allow a 10 per cent discount in exchange for a promise by the customers to send their goods to the petitioner for dyeing. This contract the petitioner designates an " executory contract," probably meaning, although that is not clear, that it constituted an offer to give the discount if the goods were turned over to the petitioner for dyeing and that such act constituted an acceptance of the offer. Such an agreement, however, rests upon the theory of the petitioner that the amounts thus paid during the taxable year in question constituted a trade discount, and were, therefore, an expense of business during that year. The facts, however, show that this " trade discount " is directly related on all facts to the fire loss and is even so set up on the petitioner's books. In addition this " discount " was admittedly allowed on some items arising before and not after the fire.

We conclude that the agreement of February 5, 1918, was a valid agreement which, to some extent, defined the relations of the petitioner and its customers, and that the payment or allowance of the $29,631.22 made during the taxable year in question was related to that contract in some manner and closely enough related to a real or supposed liability on the part of the petitioner to require us to hold that the liability accrued prior to the taxable year in question, and was, therefore, not a proper deduction in the year in which

taken. This is so whether the amount was deducted as an ordinary and necessary expense or as a loss. Upon the theory of the petitioner, or upon any theory, it is extremely difficult to think of the amounts paid as losses at any other time than in January, 1918, when the fire occurred.

2. The facts which we have found with respect to the salaries paid to the petitioner's officers in the fiscal year in question and paid officers and dyers in like corporations during the same year, are not, in our opinion, sufficient to bring the petitioner within the special assessment provisions of the Revenue Act of 1918. No exceptional hardship is shown—*Cleveland & Western Coal Co.*, 4 B. T. A. 93; nor is the payment of inadequate salaries standing alone a ground for a special relief—*United Shoe Stores Co.*, 2 B. T. A. 73; nor, in our opinion, has the petitioner proved that the disallowance of the item of $29,631.32 constitutes an abnormality. See *Charles Weisbecker, Inc.*, 3 B. T. A. 269.

3. The third issue relates to the penalty for delinquency. The petitioner delegated authority to an accountant to execute and file its return. The fact that the accountant did not know that a return for a fiscal year ended May 31, 1919, should have been filed on or before August 15, 1919, under the provisions of sections 241 (a) and 227 (a) of the Revenue Act of 1918, but thought that the return should be filed at the same time as returns made for the calendar year 1919, does not constitute the accountant any less the agent of the petitioner, or become a mitigating circumstance when the penalty for negligence is being asserted. The provisions of the Act are so plain that any one should be able to understand them, and we do not believe the petitioner can be heard to say that it did not know and its agent did not know provisions of the law which are clear. In this respect also the respondent's action is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MURDOCK concurs in the result.